**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eddy P.G.,

Petitioner,

v.

David Easterwood, et al.,

Respondents.

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-04058 (MJD/DTS)

---

Solomon Daniel Steen, Contreras Edin Law, P.A., Counsel for Petitioner.

Derek Ganzhorn, David W. Fuller, Assistant United States Attorneys, Counsel for Respondents.

---

This matter is before the Court on Petitioner Eddy P.G.'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is being detained in violation of the Fourth and Fifth Amendments, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"). Respondents counter that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) pending removal proceedings.

## I. FACTS[1]

Petitioner is a citizen of Ecuador who entered the United States on February 9, 2024.[2] (Doc. 6 at 1.) Petitioner was arrested by border patrol after he entered the United States in Santa Teresa, New Mexico. (Doc. 6-1 at 2.) On February 10, 2024, DHS issued Petitioner a Notice to Appear ("NTA") and released Petitioner on an Order of Release on Recognizance ("OREC"). (Docs. 6-1 at 2, 6-3.) Petitioner subsequently filed an Application for Asylum and for Withholding of Removal, Form I-589, on April 21, 2025. (Doc. 8.)

On September 10, 2026, North Dakota Highway Patrol stopped a vehicle on the highway near Casselton, North Dakota for failure to yield to an emergency vehicle. (Doc. 6 at 2; Doc. 6-1 at 2.) There were three people in the car, and Petitioner was one of the passengers. (Doc. 6-1 at 2.) The trooper noted that that the individuals were speaking Spanish, and an officer suspected that they were "foreign born." (Id.) Two of the individuals presented Ecuadorian passports

---

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

[2] In his original Petition, Petitioner indicated that he arrived to the United States and presented himself to border patrol on February 10, 2021. (Doc. 1 ¶ 23.) However, Petitioner's counsel acknowledged that he erroneously referenced 2021, as opposed to 2024, as Petitioner's year of entry into the United States. (Doc. 10 at 4.) The Court agrees that this error is not material to the Court's analysis.

(although one apparently had a Minnesota identification card), while the other individual reported to have a New York identification card. (Id.) Upon receiving this information, the trooper called and sent a photograph of the identification cards to ICE/ERO. (Doc. 6 at 2.)

ICE/ERO then conducted a "records check" in the DHS databases which revealed that Petitioner was currently in removal proceedings and had a pending third-degree Driving While Intoxicated charge in Hennepin County. (Id.; Doc. 6-1 at 2.) ICE officers then arrived at the scene. (Doc. 6-1 at 3.) One officer performed an immigration inspection on Petitioner, where he admitted that he was a citizen of Ecuador and that he was in immigration proceedings. (Id.) An ICE/ERO Assistant Field Office Director then issued a Warrant for Arrest of Alien, Form I-200, for Petitioner. (Doc. 6 at 2.) Petitioner was then handcuffed, searched, and placed into the ICE vehicle, where he was served the I-200. (Id.; Doc. 6-1 at 3.) Petitioner was initially transported to Grand Forks, North Dakota for processing, before being transferred to Kandiyohi County Jail, where he remains detained. (Doc. 6 at 2.)

Petitioner has a valid Employment Authorization document that permits him to work in the country. (Doc. 6-1 at 4.) Prior to his detention, Petitioner

worked in construction to support his partner and their child, who is a U.S. citizen, both of whom live in Minneapolis, Minnesota. (Doc. 1 ¶ 3; Doc. 6-1 at 4.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on September 18, 2026. (Doc. 1.) On September 21, the Court issued an Order to Show Cause. (Doc. 3.) On September 25, 2026, Respondents submitted a response. (Doc. 5.) In addition to their response, Respondents filed a declaration from William Robinson, an ICE Deportation Officer; a Record of Deportable/Inadmissible Alien (Form I-213); a Notice to Appear; and a Warrant for Arrest of Alien (Form I-200). (Docs. 6, 6-1, 6-2, 6-3.) Respondents subsequently filed a Petitioner's Application for Asylum and for Withholding of Removal (Form I-589). (Doc. 8.)

Petitioner submitted his reply to Respondents' response on October 1, 2026. (Doc. 10.)

## II. DISCUSSION

Petitioner argues that he is currently detained in violation of the Fourth Amendment and Fifth Amendment, the INA, and the APA. (Doc. 1 ¶¶ 63–152.)

**A. Jurisdiction**

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. The petitioner bears the burden to prove illegal detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. Petition Verification**

Respondents begin their response by arguing that the Court should outright dismiss Petitioner's petition because it failed to meet the "pleading requirement in habeas." (Doc. 5 at 5.) Respondents specifically argue that

Petitioner's counsel, rather than Petitioner himself, verified the accuracy of the Petition, and that the petition contains "material falsehoods." (Id. at 3–4.)

A petition for writ of habeas corpus must "be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. 2242. Yet, the Court is persuaded by reasoning laid out in Vu V.L. v. Mullin:

> A person acting on behalf of a habeas petition might sign and verify the petition because of the petitioner's "inaccessibility, mental incompetence, or other disability." One early American court explained that it was a "frequent practice" to present habeas petitions "in deportation cases signed and verified by others than the person detained" because "often for lack of time, . . . it [is] impossible to present a petition signed and verified by the person detained." That concern rings true nearly 120 years later. As courts in this District have observed over the last several months, ICE has been less than diligent in communicating with detainees and their counsel regarding a detainee's circumstances of detention and has "transferred detainees frequently, quickly, without notice, and often with no way for attorneys to know where or for how long their clients will be at a given facility." These circumstances—notably, created by the Government—no doubt present the sort of "inaccessibility" and "lack of time" that justifies an attorney to act on a petitioner's behalf in signing and verifying a habeas petition.

No. 26-CV-2947 (LMP/JFD), slip op. at 6–7 (D. Minn. July 1, 2026) (citations omitted). The Court attributes any minor misstatements from Petitioner's counsel – including the specific date of Petitioner's entry into the country and the

reference to Petitioner's parole – to an "inaccessibility" and "lack of time," for which Petitioner's counsel has taken full responsibility. (See Doc. 10 at 4.)

Therefore, the Court will consider Petitioner's habeas petition as properly verified.

**C. Petitioner's Detention Pursuant to the INA**

Respondents argue that Petitioner is properly detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2). (Doc. 5 at 3.) Respondents cite the Eight Circuit's decision in Avila v. Bondi, where the court found that "unadmitted [noncitizens] already present in the United States" are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). 170 F.4th 1128, 1136 (8th Cir. 2026). However, not only is Petitioner's situation materially distinct from that set forth in Avila, but Respondents relied entirely on the provisions of § 1226(a) to detain Petitioner.

For instance, unlike the petitioner in Avila, Petitioner here was detained by immigration enforcement when he entered the United States. (Doc. 6-1 at 2.) Instead of continuing to detain him, however, Respondents' own documents indicate that immigration officials released Petitioner on an OREC. (Id. at 2, 3 (noting that Petitioner was "released on OREC").) Respondents' decision to

release Petitioner "does not purport to invoke 8 U.S.C. § 1225(b)(2), which requires the detention of a noncitizen." Souleimane C. v. Blanche, No. 26-CV-2215 (LMP/JFD), 2026 WL 1180075, at *2 (D. Minn. Apr. 30, 2026). Instead, Respondents released Petitioner according to an OREC, "a form of 'conditional parole' from detention upon a charge of removability, authorized under section 1226."[3] Id. (quoting Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *2 (D. Minn. Jan. 5, 2026) (emphasis in original).

Moreover, in executing Petitioner's arrest, Respondents served Petitioner an I-200. (Doc. 6-2.) An I-200 indicates that the warrant is issued to authorized immigration officers "pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Id.)

[3] The parties disagree on whether Petitioner was "paroled" upon his entry into the United States. Respondents contend that he was not, citing Petitioner's NTA form, which indicates that Petitioner was "present in the United States" but "who has not been admitted or paroled." (Doc. 5 at 26 (citing Doc. 6-3).) Petitioner indicates that he was conditionally paroled under § 1226(a)(2)(B). (Doc. 10 at 4–5.) The parties appear to somewhat talk past each other in their arguments. Conditional parole, permitted under § 1226(a), is distinct from parole pursuant to 8 C.F.R. § 212.5. See Matter of Castillo-Padilla, 25 I. & N. Dec. 257, 259–61 (BIA 2010). Because Respondents own materials indicate that Petitioner was released pursuant to an OREC, a form of conditional parole, the Court ultimately agrees with Petitioner on this point.

Therefore, because Respondents represented to Petitioner on two occasions that he was subject to 8 U.S.C. § 1226 – through his release on an OREC and ICE officers' use of an I-200 – the Court will hold Respondents to this representation and consider Petitioner's arrest under the discretionary detention framework of § 1226. See Martha C.G.P. v. Blanche, 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (citing Francisco M.A. v. Blanche, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *1 (D. Minn May 5, 2026)).

Section 1226(a) prefaces arrest "[o]n a warrant issued by the Attorney General." Petitioner argues that an I-200 administrative warrant was neither issued nor served on him prior to his arrest. (Doc. 10 at 13.) However, section 1226(a) requires only that an I-200 be issued, not served, prior to arrest. See C. C. v. Blanche, No. 26-CV-3220 (LMP/SGE), 2026 WL 2137334, at *2 (D. Minn. July 24, 2026). Here, Respondents have provided evidence that the I-200 was issued prior to Petitioner's arrest. Specifically, Respondents provide a sworn declaration that after conducting a records check, an ICE/ERO Assistant Field Office Director issued a warrant for Petitioner's detention. (Doc. 6 at 2.) Respondents note that Petitioner was then detained "[o]nce it was safe to do so away from traffic" in

Casselton, North Dakota, which is consistent with the I-200 provided. (Id.; Doc. 6-2.). Without contradicting evidence, the I-200 appears valid on its face.

Still, this does not necessarily end the Court's inquiry. Petitioner maintains, and Respondents' exhibits confirm, that he was released on conditional parole via OREC when he arrived in the United States. (See Doc. 10 at 4–5; Doc. 6-1 at 2.) While Respondents do not provide Petitioner's OREC, the Court finds instructive ICE's sample Form I-220A, which states that the noncitizen is being released on their own recognizance "in accordance with section 236 of the Immigration and Nationality Act." Form I-220A, Order of Release on Recognizance, U.S. Department of Homeland Security, Immigration and Customs Enforcement, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf . See also Cuervo Marin v. Ice Field Off. Dir., No. C26-1071-KKE, 2026 WL 1123516, at *3 (W.D. Wash. Apr. 24, 2026) (taking judicial notice of ICE's sample Form 1-220A when it was not provided by the government). 8 C.F.R. § 236.1 then governs the revocation of a noncitizen's conditional release.

Section 236.1(c)(9) gives the government "immense discretion" to revoke an OREC, "but that discretion is cabined by two conditions: (1) the discretion

must be exercised to revoke the OREC; and (2) the discretion must be exercised by one of the officials listed in 8 C.F.R. § 236.1(c)(9)." Yandri F. E., V. Blanche, No. 26-CV-3835 (LMP/DTS), 2026 WL 2676764, at *2 (D. Minn. Sept. 11, 2026) (citing Sandhu v. Mullin, No. 7:26CV5009, 2026 WL 1146643, at *4 (D. Neb. Apr. 28, 2026)); see also Bryan A.Q.C. v. Lyons, No. CV 26-3165 (JRT/EMB), 2026 WL 1998719, at *2 (D. Minn. July 10, 2026) (evaluating a Form I-220A under 8 C.F.R. § 236.1(c)(9) and determining that ICE did not provide a lawful reason for revoking a noncitizen's conditional parole).

The Court cannot verify that either condition was met in this case. The sample Form I-220A also includes a line at the bottom titled "Cancellation of Order" that provides two options for revocation: "The [noncitizen] failed to comply with the conditions of release" or "The [noncitizen] was taken into custody for removal." See https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf. The I-220A then provides a signature line of the ICE Official responsible for cancelling the OREC. Id. However, because Respondents fail to provide the OREC that is noted in Petitioner's Form I-213, Record of Deportable/Inadmissible Alien, , the Court is unable to verify 1) that the Official cancelling Petitioner's OREC had the

authority to do so; or 2) whether the reason for revocation was properly given. See e.g., A.N. v. Blanche, No. CV 26-3470 (JRT/SGE), 2026 WL 2334034, at *2 (D. Minn. Aug. 12, 2026) (evaluating the OREC provided for compliance with § 8 C.F.R. § 236.1(c)(9)).

Finally, to the extent that Respondents rely on the I-200 to justify Petitioner's detention, an I-200 is insufficient on its own to revoke an OREC. See Yandri F. E., 2026 WL 2676764, at *2 (collecting cases).

Having an incomplete record on the revocation of Petitioner's OREC, the Court must consider that Petitioner's OREC remains valid.

**D. Remedy**

In sum, the Court finds that Petitioner's detention is governed by 8 U.S.C. § 1226(a). Noncitizens properly detained under 8 U.S.C. § 1226(a) are entitled to a bond hearing. See Jennings v. Rodriguez, 583 U.S. 281, 305 (2018). However, because Respondents failed to offer evidence that they complied with the 8 C.F.R. § 236.1(c)(9) in detaining Petitioner, Petitioner's detention is unlawful. See Yandri F. E., 2026 WL 2676764, at *2 (D. Minn. Sept. 11, 2026) (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954)). As such, release is the appropriate remedy. See e.g., Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE),

2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings.") (quoting Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS) (D. Minn. Dec. 19, 2025)).

Furthermore, resolution of this statutory issue renders discussion of Petitioner's other arguments unnecessary.

## I. ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** as follows:

    a. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

    b. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest, such as his driver's license, immigration papers, passport, cell phone, and keys;

    c. Petitioner shall be released on his own recognizance, subject to only those conditions as specified in his previous OREC; and

2. Respondents are ordered to confirm Petitioner's release from custody as well as the Respondents' compliance with the rest of the Court's Order within forty-eight (48) hours from the date of this Order.

3. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 14, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court